UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
|---|---|---|---|
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS): DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. #57, filed July 14, 2014)

## I.   INTRODUCTION

On February 6, 2013, Daniel Farris ("plaintiff") filed this action against International Paper Company, Inc. ("IP" or "defendant") and Does 1-100 in San Bernardino County Superior Court. Defendant removed the action to this Court on March 15, 2013, and the case was assigned to the Honorable Virginia A. Phillips. Dkt. #1. By order dated July 14, 2014, this action was transferred to the undersigned judge. Dkt. #59. The operative second amended complaint ("SAC") asserts claims for failure to pay vested vacation wages upon termination, in violation of Labor Code § 227.3[1], failure to pay wages and waiting time penalties pursuant to Labor Code §§ 202-03, violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., and violation of the record-keeping provisions set forth in Labor Code § 226. Dkt. #21.

On July 14, 2014, defendant filed a motion for partial summary judgment. Dkt. #57. Plaintiff filed an opposition on July 21, 2014, Dkt. #64, and defendant replied on July 28, 2014, Dkt. #70. The Court held a hearing on August 11, 2014. At oral argument, the Court indicated that it lacked clarity as to the scope of the claims at issue. Accordingly, the Court requested supplemental briefing on the following:

> (1) The parties should provide clarification as to whether plaintiff seeks to recover vacation pay arising from vacation days that he used during his employment with Crockett, TIN, and International Paper, but for which he

---

[1] References to "Labor Code" are to the California Labor Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
|---|---|---|---|
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

    was not paid, or whether plaintiff's claims are confined to vacation days that he accrued, and that remained unused at the time of his resignation in 2012.

    (2) The parties should provide further briefing, including any available caselaw, regarding the accrual of claims for vacation wages. Each party's brief should focus on the applicability of laches and the statute of limitations in the context of that party's position as to item one, above.

Dkt. #78. Plaintiff submitted the requested briefing on August 22, 2014. In his brief, plaintiff clarifies "that he does not seek to recover vacation pay arising from vacation days that he took . . . for the simple reason that [p]laintiff was always paid for vacation days he took during his career." Dkt. #81 (Pl. Supplemental Br.) at 1 (emphasis in original). Plaintiff further states that his claims "are confined solely to his accrued unused vacation days as of the date of Plaintiff's resignation in 2012." Id. at 2. Defendant's supplemental brief does not dispute this clarification–in fact, defendant admits that "it is undisputed that [p]laintiff is not pursuing a claim for vacation pay arising from the times he took vacation and did not receive pay." Dkt. #82 (Def. Supplemental Br.) at 1. Defendant nevertheless contends that the fact that plaintiff never received additional vacation pay is relevant to its statute of limitations and laches arguments. Id. at 1-2. These arguments were largely raised in previous briefing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND FACTS THAT ARE NOT IN DISPUTE[2]

    In or around 1983, plaintiff was hired as a sales representative by a company called Crockett Containers. Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 1; Plaintiff's Statement of Genuine Disputes ("PSGD") ¶ 1. In or around 1990, Crockett was sold to a company called Temple-Inland ("TIN"). DSUMF ¶ 4; PSGD ¶ 4. In or around February 2012, TIN was sold to defendant. DSUMF ¶ 5; PSGD ¶ 5.

---

    [2] Defendant raises a series of evidentiary objections to evidence provided by plaintiff in support of his opposition to the present motion. Unless otherwise stated herein, these objections are OVERRULED AS MOOT because the Court does not rely on the objected-to evidence in concluding that the record presents genuine disputes of material fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Approximately three months after plaintiff became employed by defendant, he resigned his employment. DSUMF ¶ 12; PSGD ¶ 12. Plaintiff subsequently filed this action, alleging "entitlement to thousands of hours of purported accrued but unused vacation time, spanning the more than 28 years he worked for Crockett, TIN, and subsequently [defendant]." DSUMF ¶ 13; PSGD ¶ 13.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

## IV. DISCUSSION

### A. Defendant's Liability for Benefits Accrued Prior to its Acquisition of TIN

Defendant first contends that its liability for accrued vacation pay is limited to the three-month period during which it employed plaintiff. According to defendant, it cannot be liable for vacation pay accrued while plaintiff was employed by Crockett or TIN because plaintiff did not consent to a transfer of those benefits from Crockett to TIN, or from TIN to IP. This argument lacks merit because it is grounded in a section of Labor Code and a California Court of Appeal decision that are inapplicable to the present case. In particular, defendant relies on Labor Code Section 2920, which states that "[e]very employment is terminated by . . . extinction of its subject." Cal. Labor Code § 2920(b). This section of the Labor Code is merely a reflection of the general principle that "[a]n agency or employment is terminated by expiration of the term, extinction of the subject matter, or the deal or incapacity of either the principal or agent." See 3 Witkin, Summ. Cal. Law Agency § 205 (10th ed. 2005) (citing section 2920 in support of the statement of the "[g]eneral rule" regarding the lawful termination of agency or employment by operation of law).

The case cited by defendant in support of this argument, Chapin v. Fairchild Camera etc. Corp., 31 Cal. App. 3d 192 (1973), is similarly inapposite. There, the defendant, Fairchild, sold its "Memory Products" department to another company, Core Memories. Id. at 194-95. Core Memories represented to the employees of the Memory Products department that it would retain them under employment terms substantially similar to terms that existed when Fairchild was their employer. Id. at 195-96. However, shortly after the sale occurred, Core Memories terminated approximately half of the former Fairchild employees. Id. at 195. Core Memories paid severance benefits to some of these employees, but they were not as favorable as the severance benefits offered by Fairchild. Id. The employees sued Fairchild, their former employer, seeking the severance benefits that they would have received if they had been laid off by Fairchild directly. Id. The trial court found that the plaintiff employees' transfer from Fairchild to Core Memories constituted a novation of the employee's terms of employment, and that Fairchild was no longer obligated to provide benefits to its former employees. Id. at 196. The Court of Appeal reversed, holding that "Fairchild's sale of Memory Products was a

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

permanent layoff of the [plaintiff employees]," which gave rise to an obligation on the part of Fairchild to pay severance benefits on the terms available to any terminated employee.  Id. at 198.  The court reasoned that Fairchild's sale of Memory Products "was entirely involuntary on the part of the [plaintiff employees]," and that the sale "made it wholly impossible for the Employees to continue their employment with Fairchild."  Id. at 199.

      Here, defendant argues that, under Chapin and section 2920, liability for employee benefits remains with the original employer, absent the express written consent of the employees to whom the benefits are owed.  However, neither Chapin nor section 2920 applies to the present case, where plaintiff seeks to hold defendant liable for accrued vacation pay on the grounds that it is a successor to TIN and Crockett.  Successor liability in California is governed by the framework set forth in Ray v. Alad Corp., 19 Cal. 3d 22, 28 (1977).  In Ray, the California Supreme Court explained that a corporation purchasing the principal assets of another corporation

> does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

Id.  In support of his contention that defendant is liable as a successor to Crockett and TIN, plaintiff provides the testimony of Yeghia Bekiarian, who defendant alleges is "former officer and employee of Crockett, TIN, and International Paper," see dkt. #38 ¶ 2.  Bekiarian testified that the "accrued vacation" policies in effect at Crockett "were carried forward" when Crockett was acquired by TIN.  See Bekiarian Dep. 158-61; 167.  Similarly, Bekiarian testified that all benefits provided by TIN were "carr[ied] forward" unchanged when IP took over TIN.  Id. at 160.  This evidence gives rise to a genuine issue of material fact as to whether an "express or implied agreement of assumption" existed between Crockett and TIN, and between TIN and IP.  Moreover, plaintiff provides evidence that IP's acquisition of TIN constituted a merger of IP and TIN, see generally Beilke Decl. Ex. 8 ("Agreement and Plan of Merger between [IP], Metal Acquisition Inc., and [TIN]"), thereby providing an additional potential basis for successor liability, see Ray, 19 Cal. 3d at 28.  Based on this evidence, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

concludes that genuine disputes of material fact exist as to whether IP is liable for alleged vacation pay accrued prior to its acquisition of TIN.

### B.  Statute of Limitations

Next, defendant argues that plaintiff's claim for any vacation pay accrued prior to February 6, 2009, is barred by the four-year statute of limitations applicable to such claims. According to defendant, "[t]he limitations period on a claim for vacation wages is four years after a person takes vacation and does not receive vacation wages." Mot. Summ. J. at 8.³ Plaintiff responds that "a separated employee's unpaid accrued vacation wages begins to run on the date of the employee's separation from employment." Opp'n Mot. Summ. J. at 14. Thus, according to plaintiff, his claim for unpaid vacation benefits did not accrue until he resigned from his employment with IP on May 11, 2012, and his action is therefore timely because it was filed on February 6, 2013.

Plaintiff asserts claims for accrued but unused vacation days. After the hearing, it remained unclear whether plaintiff also sought vacation pay arising from vacation days that he used during the course of his employment with Crockett, TIN, and IP, but for which he was not paid. After supplemental briefing, however, it appears that plaintiff's claims are limited to accrued but unused vacation days. Therefore, defendant's arguments as to the statute of limitations for taken but unpaid vacation claims are irrelevant.

Because plaintiff's claim for vacation pay is premised on vacation days that he accrued, but never used throughout his employment, the timeliness of his claim is governed by Church v. Jamison, 143 Cal. App. 4th 1568, 1576 (2006). There, the Court of Appeal explained that "[u]nder Labor Code Section 227.3, an employee has the right to be paid for unused vacation only after the employee is terminated without having taken

---

³ Defendant asserts that the applicable statute of limitations for vacation wage claims is an open question, but assumed for purposes of this motion that a four-year period applied. Def. Supplemental Br. at 2 n.2. The Court need not address this issue at this stage because, for the reasons stated herein, plaintiff filed this action less than one year after it accrued. Thus, even if the statute of limitations were one year, this action was timely filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

off his vested vacation time." Id. The Court of Appeal therefore concluded that a "cause of action seeking payment for unused vested vacation [does] not accrue" until the termination of the employment relationship. Id. at 1577. The Court accordingly finds that plaintiff's claim for vacation benefits did not accrue until he resigned on May 11, 2012, and that the statute of limitations does not bar this claim.

### C. Laches

In addition to arguing that plaintiff's claims are barred by the statute of limitations, defendant also argues that plaintiff's claims are barred by the equitable doctrine of laches. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." Johnson v. City of Loma Linda, 24 Cal. 4th 61, 68 (2000). Defendant cites Sequeira v. Rincon-Vitova Insectaries, Inc., 32 Cal. App. 4th 632 (1995) for the proposition that plaintiff's claims, some of which are grounded on vacation pay allegedly accrued several decades ago, are barred by laches because plaintiff's memory of pertinent facts has faded. Defendant contends that plaintiff's inability to recall the details of his past compensation as well as the dates and durations of vacations that he has taken hinders defendant's ability to defend against plaintiff's claims.

The Court finds defendant's argument unpersuasive. Sequeira was decided prior to a change in the law governing the accrual of claims for vested vacation wages. At the time that Sequeira was decided, a claim for vacation wages accrued at the same time that the wages vested, i.e., at the time that they were earned. See id. at 636-37. However, in Church, discussed above, the Court of Appeal held that a claim for vested vacation wages accrues at the time of termination. The Court finds Church to be more persuasive than Sequeira because it represents the most recent statement from the California courts regarding the accrual of claims for vested vacation wages. Moreover, the Sequeira court grounded its conclusion in large part on deference to the position of the DLSE on the accrual of such claims. Since Church was decided, the DLSE has taken the position that, "[i]n the case of an employee with vested vacation entitlement at termination," the statute of limitations begins to run "at the time final wages are due." DLSE Enforcement Policies and Interpretations Manual § 15.1.9, available at http://www.dir.ca.gov/dlse/DLSE_EnfcManual2012.pdf. Accordingly, based on Church and the position of the DLSE, the Court concludes that claims for vested vacation wages accrue at the time of termination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

Since plaintiff's claims for vested but unused vacation benefits accrued at the time that his employment was terminated, the Court finds that plaintiff did not unreasonably delay filing this action. The parties do not dispute that plaintiff's employment terminated in May 2012, and that he filed this action in February 2013, less than one year later. This delay of less than one year is not unreasonable. Indeed, if plaintiff had attempted to file this action prior to the termination of his employment, it would have been subject to "dismiss[al] as premature." Church, 143 Cal. App. 4th at 1577. Accordingly, plaintiff's claims are not barred by laches. See Johnson, 24 Cal. 4th at 68.[4]

### D. Calculation of Plaintiff's Accrued Vacation Pay

The parties agree that defendant must pay vacation wages, to the extent that they are due, at plaintiff's "final rate of pay." See 3 Witkin, Summ. Cal. Law Agency § 418 (10th ed. 2005); see also Cal. Labor Code § 227.3 (stating that accrued vacation wages must be paid at the employee's "final rate" upon termination). Defendant contends that this "final rate" should be calculated based on a rate of pay of $4,000 per month. In support of this contention, defendant asserts that plaintiff's "final rate" included a $4,000 "monthly draw" that was subtracted from a monthly payment that was "calculated based on the average commissions [p]lainitff earned in the previous 12 months." Mot. Summ. J. at 2. Defendant cites a DLSE Opinion Letter, dated November 17, 1986, for the proposition that vacation pay is calculated based on the amount of the draw, and not on the amount of the draw plus the amount of commissions. See DLSE Opinion Letter 1986.11.17, available at http://www.dir.ca.gov/dlse/opinions/1986-11-17.pdf. In response, plaintiff provides evidence that, as of March 2012, he was paid a "fixed monthly salary" equal to 1/12 of the commissions that he earned in the prior year. See Bekiarian Dep. 192-93 (Q: So [IP] changed from a salary commission to a straight salary; is that correct? . . . A: That is correct . . . Q: And was this change applied to Dan Farris? . . . A: Yes, it was.); Farris Decl. ¶ 3 ("I was told by Lee Bekiarian that my monthly salary commencing in March of 2012, would be $83,880.80"); Farris Decl. Ex. 1 (referring to

---

[4] The Court also notes that, since Sequeira, no reported opinion has found a claim under section 227.3 to be barred by laches.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

"12 month average monthly compensation").[5] This evidence demonstrates that genuine issues of disputed material fact exist regarding the terms of plaintiff's compensation at the time that his employment was terminated.

     Moreover, even accepting defendant's assertions regarding plaintiff's compensation as true, genuine disputes of material fact remain as to the correct method of calculating vacation pay. This is so because Labor Code Section 227.3 requires that vested vacation time be paid out "as wages at [an employee's] final rate <u>in accordance with such contract of employment or employer policy respecting eligibility or time served</u>." Cal. Labor Code § 227.3 (emphasis added). Thus, the relevant question is not whether plaintiff was paid a monthly draw plus commissions, or a fixed salary. Rather, the question is what rate plaintiff "would have been paid during a vacation, had he taken one" at the point when his employment was terminated. See <u>Drumm v. Morningstar, Inc.</u>, 695 F. Supp. 2d 1014, 1019 (N.D. Cal. 2010). This general rule is recognized in the opinion letter cited by defendant, when it states that the DLSE would compute the amount of vacation pay due to an employee by "look[ing] to the basic vacation policy or agreement and require the employer" to calculate vacation pay on that basis. See DLSE Opinion Letter 1986.11.17.[6] This same letter also states that "there could be numerous combinations of draws and commissions available as a basis for setting a vacation policy." <u>Id.</u> Thus, even according to the DLSE Opinion Letter cited by defendant, commissions could potentially figure into the calculation of vacation pay. Defendant has

---

    [5] Defendant objects to paragraph 3 of the Farris declaration on the grounds that it constitutes hearsay, lacks foundation, and misstates the cited evidence. These objections are OVERRULED. The statement is not hearsay because it is offered as a statement made by an agent of a party opponent. <u>See</u> Fed. R. Evid. 801(d)(2)(D). The statement does not lack foundation because plaintiff appears to be recounting a statement made to him by Bekiarian. Finally, it is unclear how this statement "misstates cited evidence" because it does not cite any evidence.

    [6] This letter notes that "[i]t is very rare than an employer would average out commissions for the perior prior to the vacation and pay this amount during the vacation period." DLSE Opinion Letter 1986.11.17. However, it also states that "there could be numerous combinations of draws and commissions available as a basis for setting a vacation policy." <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | 5:13-cv-00485-CAS(SPx) | Date | August 26, 2014 |
|---|---|---|---|
| Title | DANIEL FARRIS V. INTERNATIONAL PAPER COMPANY, ET AL. | | |

not presented the record in a manner which would permit the Court to determine, as a matter of law, at what rate plaintiff would have received vacation pay "had he taken" a vacation at the time that he terminated his employment. See Drumm, 695 F. Supp. 2d at 1019.[7]

## V.  CONCLUSION

In accordance with the foregoing, defendant's motion for partial summary judgment is hereby DENIED.

IT IS SO ORDERED.

|                     | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[7] Defendant provides a copy of TIN's Human Resources Policy Handbook, dated October 2006. Gillinger Decl. Ex. F. However, this document sheds little light on this issue because it simply states that "[a] vacation day is compensated at the employee's regular rate of pay at the time the vacation day is used." Id. at 33. It does not appear to make any mention of how commissions would figure into the calculation of vacation pay.